Burke, J.
The plaintiffs appeal as of right from judgments entered on orders of reversal dismissing their complaints against Biggs. The defendant Hole appeals by permission from the affirmance of judgments in favor of the plaintiffs against him.
The question presented on the appeals from the dismissal of the complaints is whether, under a one-trip lease, the lessee carrier (Biggs Dairy Express, Inc., operating pursuant to an Interstate Commerce Commission [ICC] franchise) can be held liable for the negligence of the lessor’s driver (Plessinger) which occurred subsequent to the delivery of the cargo and while en route to locate a return load. In viewing the facts [1] ‘ in the *455 aspect most favorable to plaintiffs ” (Sagorsky v. Malyon, 307 N. Y. 584, 586), we find that plaintiffs established a prima facie case against Biggs, and that the dismissal of the complaints was, therefore, improper.
On November 15, 1956 Biggs entered into a motor trip lease agreement with defendant Hole’s driver (Plessinger) for the purpose of transporting a cargo of an ICO regulated commodity from Chicago, Illinois, to Somerville, Massachusetts. Upon arrival at Somerville on November 19, 1956, Plessinger secured a helper at Welby’s Truck Terminal, unloaded his truck and, subsequently, in accordance with instructions, made a check call to Biggs at Chicago to report delivery. Since no return load was available at Welby’s, he proceeded, pursuant to Biggs’ general manager’s suggestion given a year before, to Jack Smith’s (a cargo broker) at Avoca (near Bath, New York). Bn route he met ‘ ‘ another Biggs Dairy driver ’ ’ and they proceeded directly to Smith’s, but, since a return load was not available, he detached the trailer and secured lodgings in Bath. Two days later, on November 22, 1956, while returning to Smith’s, he was involved in the accident giving rise to the present actions. Subsequent to the accident, and on December 1, 1956, a return load was obtained through the services of Smith. It is not without significance that the necessary liability insurance for this cargo was supplied through Biggs and billed to Hole at a cost based upon gross revenue; that Smith’s manifest refers to the tractor as being owned by ‘ ‘ Harvey Hole per Biggs DXP ’ ’; and Smith testified that, every time he did business with Plessinger in the three years prior to the accident, Plessinger was operating for Biggs.
It is obvious that, if the accident had taken place during the initial trip to Somerville, the lessee Biggs would have been responsible. (Costello v. Smith, 179 F. 2d 715; ICC Beg. [Code of Fed. Beg., tit. 49], § 207.4, subd. [a], par. [4]; Bestatement, Torts, § 428.) Bespondent Biggs argues, however, and the Appellate Division held, that the contract between the parties was a one-way lease which had been fully performed five days prior to the accident, which happened at a time when Plessinger was solely Hole’s employee. We do not agree.
Due to grave concern over abuses and exploitation of trip leasing (Beports of the Commission, Lease and Interchange of *456 Vehicles by Motor Carriers Ex Parte No. MC-43, 51 M. C. C. 461 [1950]; 52 M. C. C. 675 [1951]; Trip-Leasing Under the Motor Carrier Act, 34 Boston L. Rev. 307; Liability of Carriers for Independent Contractors’ Negligent Operation of Leased Motor Trucks, 43 Iowa L. Rev. 531) and in order to provide safeguards and delineate responsibility following an accident, the Motor Carrier Act of 1935 was fortified with the regulations and rules adopted and promulgated[1] by the Interstate Commerce Commission, effective September 1, 1953 (Code of Fed. Reg., tit. 49, ch. I, subchapter B, part 207; upheld in American Trucking Assns. v. United States, 344 U. S. 298). These rules provided in pertinent part as follows:
“ § 207.4 * • *
(a) . The contract, lease, or other arrangement for the use of such equipment —
(1) . Shall be made between the authorized carrier and the owner of the equipment;
(2) . Shall be in writing * * *
(4). Shall provide for the exclusive possession, control and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the authorized carrier, as follows:
(i) For the duration of said contract, lease or other arrangement * * *
(6) . * * * The duration of the contract, lease or other arrangement shall coincide with the time for the giving of receipts for the equipment, as required by paragraph (b) of this section; and
(7) . Shall be executed in triplicate; * * * one copy shall be retained by the owner of the equipment, one copy shall be carried on the equipment specified therein during the entire period of the contract, lease or other arrangement. * * *
(b) . Receipts * ' * * and when the possession by the authorized carrier ends, it or its employee or agent shall obtain from the owner of the equipment, or its regular employee or agent duly authorized to act for it, a receipt *457 specifically identifying the equipment and stating therein the date and the time of day possession thereof is taken.
* * *
(d). Identification of equipment. The authorised carrier * * * shall properly and correctly identify such equipment as operated by it when such equipment is operated by or for such carrier, during the period of the lease. * * *
(1). The authorised carrier operating equipment under these rules shall remove any legend, showing it as the operating carrier, displayed on such equipment, and shall remove any removable device showing it as the operating carrier, before relinquishing possession of the equipment.”
The purpose of the latter complementary section, it seems, is to implement the former provisions relating to exclusive possession and assumption of responsibility. The object is reasonably accomplished by expressly providing how and when possession is to terminate. Any other construction would permit willful false identification without penalty, and render the provision impotent. It is noteworthy, therefore, that, at all times before mentioned and especially at the time of the accident, the tractor involved bore Biggs’ identification decal (see § 207.4, subd. [d]), and Biggs had not obtained a receipt (see § 207.4, subd. [a], par. [6]; subd. [b]) from Plessinger indicating that possession had been relinquished to lessor Hole. Both the lease and the attached unsigned receipt were with Plessinger (see § 207.4, subd. [a], par. [7]) at the time of the accident. In addition, the evidence indicates that it was customary for the decal to remain, and for the papers to be, in the operator’s possession until after his return to the home station. This evidence tends to show that, regardless of the written provisions of the lease to the contrary, Biggs acquiesced in a violation of the express mandate of the regulations which provide for the proper method to relinquish possession. Since Biggs seemingly failed to comply, or take any serious steps to assure compliance, it does not seem unreasonable to leave the question of liability to a jury. Although the settlement instructions of: the contract provide that the “ [d]elivery receipts, log sheets and settlement copy of the within lease and agreement must be mailed on the same day cargo is delivered ”, *458 it states an alternative that “ [i]n the event lessor shall fail to follow the above instructions payment may be delayed 30 days after the trip release is completed ’ ’. In addition to the fact that these instructions did not insure the removal and forwarding of the decal, it seems apparent from the record that Plessinger preferred, and Riggs acquiesced in, the suggested alternative. However, even if it be assumed that Plessinger breached his duty to remove the decal and forward the documents, a jury may find that in this capacity he was acting as Riggs ’ agent, and that Riggs is, therefore, responsible for the default. In this regard it is significant that evidence was adduced indicating that return trips were an absolute economic necessity; and that from this evidence an inference could be reasonably drawn that Riggs, although not participating in the return profits, found it necessary to assist drivers in finding incoming trips in order to secure the continued willingness of the truckers to carry its outgoing cargo. In this posture Riggs’ voluntary advice, insurance service and permission to retain the decals and the receipts are matters obviously vital to the issues presented. As noted by the dissent below “ The permission to retain the Riggs’ I. C. C. decals or placards upon the trucks was part of the same pattern, designed to serve the same end, or at least a jury could so find. "While it was not necessary to use the I. C. C. franchise for shipments of agricultural products, since they were exempt, the permission to use Riggs’ name and I. C. 0. certificate number was helpful in various ways upon the return trip. For one thing, prospective shippers were more likely to give business to one who operated under an established common carrier name and certificate than to an individual trucker operating under his own name without I. C. C. certification and without any evidence of financial responsibility. Furthermore, public officials checking the vehicle en route would be influenced by the presence of the I. C. C. placard as indicating that proper inspections of the vehicle had been made and that the operation was being conducted by a responsible certificated carrier.” (Emphasis supplied.)
The terms of the lease, in and of themselves, would have no effect upon a possible disregard of the nondelegable mandate of the regulations. (See American Tr. Lines v. Smith, 246 F. 2d 86, 89; Hodges v. Johnson, 52 F. Supp. 488, 491.)
*459 If the jury were to conclude that Biggs willfully failed to comply, it is apparent that, under the regulations and in accord with its policy, Biggs as a matter of law would be in possession and control and, therefore, must assume responsibility.
In Fullerton v. Motor Express (375 Pa. 173) the court stated that “ The law is clear that an identifying sign on a commercial vehicle declares its reputed ownership as much as a flag proclaims the nationality of the ship which flies it. If the ship is sailing under false colors it will have to answer for the deception. If a name on a vehicle mis-states ownership, opportunity is afforded the named person or firm to disprove the asserted proprietorship. '* * * Any business organization which permits a commercial conveyance to ply the public highways prominently proclaiming its name owes a duty to the public to stand by that voluntary self-advertising proclamation. That responsibility, of course, is not absolute. The named firm may introduce evidence to show that the identifying trappings were camouflage, or innocent coincidence, or that, although admitting ownership of the vehicle, the driver thereof ignored instructions and headed for Chicago instead of New York as directed. But such explanations are for the jury to evaluate and appraise in the light of all the surrounding circumstances.” (Fullerton v. Motor Express, supra, pp. 175-176; emphasis supplied; see, also, the automobile registration cases, Switzer v. Aldrich, 307 N. Y. 56; Buono v. Stewart Motor Trucks, 292 N. Y. 637; Reese v. Reamore, 292 N. Y. 292; Shuba v. Greendonner, 271 N. Y. 189.)
This estoppel and submission to the jury is quite in harmony with the public policy of this jurisdiction in analogous situations. For example, in Barber v. Jewel Tea Co. (278 N. Y. 540; see, also, Zeiger v. Riley, 270 App. Div. 771), we held that whether a truck was being used in the defendant’s business and was subject to its control and direction was properly submitted to the jury.
On this record, therefore, we belive that a prima facie case has been made out, and that a jury may conclude that Biggs is liable for knowingly allowing the use of its name and certification, and/or that (in view of § 207.4, subd. [a], par. [6]) the lease was still in effect at the time of the accident.
The cases cited by respondent are not controlling since they relate to accidents occurring prior to the effective date of the *460 regulations herein. (See, for example, Gallagher’s Estate v. Battle, 209 Md. 592.) In Costello vs Smith (179 F. 2d 715), in addition to the fact that the driver removed the decal before starting on the return trip, the court, in holding for the carrier, stated that, so long as the properly constituted authority was not content to regulate further the operation of trip leases, the court could not do so judicially. It is interesting to note that the ICO, filing a brief as amicus curice, informed the court that it was then considering regulations to protect the public against danger of one-way trip leases. These are the regulations, of course, which subsequently became effective prior to the accident herein.
Respondent Riggs, although not raising this question in the Appellate Division, now contends that the record is devoid of proof of negligence on the part of Plessinger. Riggs argues that the evidence that the tractor was skidding on the wrong side of the road is insufficient to raise an inference of negligence.
However, here there was a showing of negligent operation, hence the question of fault did not depend upon an inference of negligence. In the case at bar we have evidence of speed in excess of the limit permitted by the ordinance. (See Cole v. Swagler, 308 N. Y. 325, 330.) There was, therefore, enough evidence offered to make out a prima facie case.
On the cross appeal, defendant Hole contends that, since his liability was submitted solely under former section 59 (now § 388) of the Vehicle and Traffic Law, the trial court erred in refusing to permit evidence of lack of permission to operate the truck. In this regard Hole offered to testify that Plessinger violated the express terms of their[2] lease agreement which mandated that insurance coverage be provided by Plessinger. The agreement was entered into approximately seven years prior to the accident. The trial court refused this offer of proof (1) because as a matter of law such noncompliance with the terms of the lease would not terminate or revoke any permission which may have been given, and (2) it did not come within any exception to the general rule which excludes evidence of insurance. Although we agree that the lease is at least *461 ambiguous as to whether “ permission to operate and use ” shall cease (as distinguished from general termination of the entire lease), we do not believe it is a question that should have been decided as a matter of law.
It is axiomatic that, under former section 59 of the Vehicle and Traffic Law, proof of ownership of a motor vehicle creates a rebuttable presumption that the driver was using the vehicle with the owner’s permission, express or implied (Wilson v. Harrington, 295 N. Y. 667; St. Andrassy v. Mooney, 262 N. Y. 368) and that this presumption continues until there is substantial evidence to the contrary. Where, therefore, substantial evidence established that permission was conditioned upon driving in a certain locality only (Chaika v. Vandenberg, 252 N. Y. 101 [son told not to drive in New York City]; Lozada v. Copeland, 207 Misc. 382 [cousin told to operate in the vicinity of Ebbets Field only]) or conditioned upon instructions not to allow any riders (Conea v. Cushman’s Sons, 277 App. Div. 360), the owner was exonerated from liability when an accident occurred subsequent to a breach of the restriction. These type restrictions are, of course, to be distinguished from limiting instructions which relate to the manner of operation, such as the speeding or careless pilotage of the car. In this latter situation the owner is still held accountable (Arcara v. Moresse, 258 N. Y. 211). However, even where the owner may escape liability, it is unquestionable that, unless the evidence adduced has no merit whatsover, the question of consent and authority is for the jury. (Leahy v. Kaszubski, 283 App. Div. 947, motion for leave to appeal denied 307 N. Y. 940; Ferris v. Sterling, 214 N. Y. 249, 253; Piwowarski v. Cornwell, 273 N. Y. 226, 228; Goldberg v. Frankel, 293 N. Y. 784.)
We hold that the insurance provision of this written contract is at least sufficient to raise a question of fact for the jury. The argument that such evidence is to be withheld under the general rule which excludes all evidence of insurance is untenable.
Ordinarily whether a defendant has or has not obtained insurance is irrelevant to the issues, and, since highly prejudicial, therefore, inadmissible. (Simpson v. Foundation Co., 201 N. Y. 479; Lindboe v. Syracuse Tr. Co., 175 Misc. 396.) However, if this fact is relevant- to one of the material issues, it cannot be *462 excluded on the ground that it may be prejudicial (Richardson, Evidence [8th ed.], § 174, p. 143; 4 A. L. R. 2d 761). For example, it has been held proper to admit evidence that defendant insured the premises in question in order to prove that he either owned or controlled them (McGovern v. Oliver, 177 App. Div. 167; Martyn v. Braun, 270 App. Div. 768). The trial court erroneously limits the exceptions to ownership and control. We think that the question of permission is a material issue vitally affected by the provision of the lease requiring insurance. The offer of proof should not, therefore, be rejected upon the pretext that it is incidentally prejudicial to plaintiffs’ action.
Accordingly, the judgments below should be reversed and a new trial granted, with costs to abide the event, on all issues except the negligence of Plessinger.

. It is conceded that section 207.4 (subd. [a], par. [3]), providing that trip leases “shall be not less than 30 days”, was not in effect at the time of the accident herein.

. This lease is not to be confused, with the lease made with Riggs by Plessinger on behalf of Hole.