**Marguerite T. O'CONNOR, as Administratrix of the Goods, Chattels and Credits of Daniel J. O'Connor, Deceased, Plaintiff,**

v.

**LEE–HY PAVING CORP. and Davis E. Clem, Defendants.**

No. 75 C 1853.

United States District Court,
E. D. New York.

Sept. 27, 1977.

Cyrus Diamond, New York City (Fuchsberg & Fuchsberg, New York City, of counsel), for plaintiff.

Thomas M. Bistline, New York City (Simpson, Thacher & Bartlett and Roy L. Reardon, New York City, of counsel), for defendants.

MEMORANDUM and ORDER

DOOLING, District Judge.

Defendants, by motion to set aside the order of attachment and service of process and to dismiss the action, raise the question whether *Shaffer v. Heitner*, 1977, ⸺ U.S. ⸺, 97 S.Ct. 2569, 53 L.Ed.2d 683, invalidates jurisdiction based on the typical *Seider v. Roth*, 1966, 17 N.Y.2d 111, 269 N.Y. S.2d 99, 216 N.E.2d 312, attachment.

The action is for personal injuries and wrongful death. The claim is that plaintiff's decedent was killed through the negligent operation of a grader owned by Lee-Hy and driven by Clem at a shopping center construction site in Henrico County, Virginia. The decedent was, and the plaintiff widow and her three children are residents of New York. Lee-Hy is a Virginia corporation the activities of which are confined to that state and Clem is a resident of Virginia, an employee of Lee-Hy and has been working only in Virginia. The decedent was an employee of a New York corporation and his office was at the firm's New York office; he visited the shopping center construction site frequently, at least once a week, and, frequently, three or four times in a single week. He was on an overnight visit to the site on September 24, 1975, when he was killed.

Plaintiff obtained a *Seider v. Roth* attachment based on the contractual obligations of Royal Globe Insurance Company and Continental Casualty Insurance Company to defendant Lee-Hy. Both insurance companies maintain offices in New York.

Defendants argue that *Shaffer* requires for the exercise of jurisdiction sufficient contacts among the forum, the defendant and the litigation to satisfy the standards of *International Shoe Co. v. Washington*, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.* Applying that test, they argue that defendants had no relevant contact whatever with the forum state, New York. The necessary conclusion, they urge, is that it is only the suability of the insurers, treated as "property" of defendants, that can be put forward as the basis of jurisdiction, and that, under *Shaffer* is insufficient.

Plaintiff contends, in substance, that this is not a case in which jurisdiction builds on nothing but property unconnected with the subject matter of the action, but an application of a now familiar jurisdictional principle that was evolved in keeping with the standards outlined in *International Shoe*. Plaintiff notes that she is a New York resident and that the insurance contracts are contracts to defend against and indemnify against her claim.

Defendants reply that it is defendants' not plaintiffs', contacts with New York that are jurisdictionally significant, and that the property here, the insurance contracts, are "property" in which plaintiff has an interest only if and to the extent—and perhaps, even, when—her claim is shown to be valid, and is, thus, no different from any other

---

* International Shoe raised the questions (1) whether the Company was liable to the state for unemployment compensation fund contributions based on the wages paid by the company to its eleven to thirteen salesmen resident in the state for their services in the state, and (2) whether, when the Company did not pay the contributions, the state could enforce payment by suit initiated by service of process on one of the resident salesmen. The Court concluded (326 U.S. at 320, 66 S.Ct. at 160):

"Applying these standards, the activities carried on in behalf of appellant in the State of Washington were neither irregular nor casual. They were systematic and continuous throughout the years in question. They resulted in a large volume of interstate business, in the course of which appellant received the benefits and protection of the laws of the state, including the right to resort to the courts for the enforcement of its rights. *The obligation which is here sued upon arose out of those very activities.* It is evident that these operations establish sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which appellant has incurred there. Hence we cannot say that the maintenance of the present suit in the State of Washington involves an unreasonable or undue procedure."

An issue was whether commerce was impermissibly burdened by the unemployment compensation system and its enforcement in the Company's case, and the Court held that it was not.

property seized under a writ of foreign attachment.

*Shaffer* is best read for the legal concepts it enunciates rather than for its application of them to the facts in the record before it. The dissent of Mr. Justice Brennan from Part IV of the opinion, and that part only, suggests that, and the dissent reflects also disagreement with the limited or nil significance assigned to the choice-of-law factor in determining the question of jurisdiction (—— U.S. at ——, ——, 97 S.Ct. at 2586, 2591). *Shaffer* clearly and repeatedly emphasizes that jurisdiction depends on a finding of sufficient contacts among defendants, the litigation, and the forum (state) (—— U.S. at ——, ——, ——, ——, —— – ——, 97 S.Ct. at 2572, 2576, 2580, 2582, 2582–2583, and, in concurring and dissenting opinion, ——, 97 S.Ct. at 2588), and holds that, while the presence of property in the forum state may bear on the existence of jurisdiction by providing contacts among the forum state, the defendant, and the litigation (—— U.S. at ——, 97 S.Ct. at 2582), where the property assertedly serving as the basis for jurisdiction is completely unrelated to plaintiff's cause of action, the presence of the property alone would not support a State's judicial jurisdiction (—— U.S. at —— – ——, 97 S.Ct. at 2582–2583), and all assertions of state judicial jurisdiction must be evaluated by the standards set out in *International Shoe* and later cases (—— U.S. at —— – ——, 97 S.Ct. at 2584–2585). The Court rejected as without modern justification the "fiction" that jurisdiction over property is anything but an assertion of jurisdiction over the owner of the property. The standard drawn from *International Shoe* (—— U.S. at —— – ——, 97 S.Ct. at 2579–2580) is this:

"The question in *International Shoe* was whether the corporation was subject to the judicial and taxing jurisdiction of Washington. Chief Justice Stone's opinion for the Court began its analysis of that question by noting that the historical basis of *in personam* jurisdiction was a court's power over the defendant's person. That power, however, was no longer the central concern:

'But now that the *capias ad respondendum* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278.' 326 U.S., at 316, 66 S.Ct., at 158.

"Thus, the inquiry into the State's jurisdiction over a foreign corporation appropriately focused not on whether the corporation was 'present' but on whether there have been

'such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there.' *Id.*, at 317, 66 S.Ct., at 158.

Mechanical or quantitative evaluations of the defendant's activities in the forum could not resolve the question of reasonableness:

'Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations.' *Id.*, at 319, 66 S.Ct., at 160.

Thus, the relationship among the defendant, the forum, and the litigation, rather than the mutually exclusive sovereignty of the States on which the rules of *Pennoyer* rest, became the central concern of the inquiry into personal jurisdiction. The immediate effect of this departure from *Pennoyer's* conceptual apparatus was to increase the ability of the state

courts to obtain personal jurisdiction over nonresident defendants." (Footnotes omitted.)

Noting that in cases like *Harris v. Balk*, 1905, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023, "the only role played by the property is to provide the basis for bringing the defendant into court," the Court said (—— U.S. at ——, 97 S.Ct. at 2583):

"In such cases, if a direct assertion of personal jurisdiction over the defendant would violate the Constitution, it would seem that an indirect assertion of that jurisdiction should be equally impermissible."

It is not argued, nor could it be, that Lee-Hy or Clem have even a minimum of contacts with New York, the forum state, or that, if, instead of contract rights against two insurers, tangible property transiently in New York were the property attached, it would be easy to claim that jurisdiction could exist in a New York court. That is not clear to the exclusion of every doubt. If *Pennoyer v. Neff*, 1877, 95 U.S. 714, 722, 723, 727, 24 L.Ed. 565, was wrong so far as it sought to resolve questions of jurisdiction in terms of two principles, that is, that each state has exclusive jurisdiction and sovereignty over persons and property within its territory and that no state can exercise direct jurisdiction and authority over persons or property outside its territory, and was wrong to conclude that due process with respect to the judicial disposition of property required no more than seizure of it at the very outset of the judicial proceeding and the giving of adequate notice and the opportunity to defend against the claim on which the property was seized, the new standard cannot be taken as crystallized into a declaration that every suit initiated against a non-resident by writ of foreign attachment must be dismissed. The conclusion is, rather, that it must be examined anew to determine whether the demands of fundamental fairness have been met or flouted, using the *International Shoe* and *Shaffer* standards. In that analysis, the kind of jurisdiction professedly exercised is significant. It, then, becomes necessary to note that in *Shaffer* and in *International Shoe* the jurisdiction sought to be exercised was personal jurisdiction, the power to award a judgment against the defendant personally in any amount warranted by the evidence. In a wider analysis it is to be borne in mind that when allegedly tortious conduct causes death, a legal relationship is established between the alleged tort feasor and the decedent's dependents. Despite *Hanson v. Denckla*, 1957, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283, an analysis of jurisdictional propriety in the ultimate terms implied by *Shaffer* cannot ignore the claimants' circumstances and her interest in litigating in the forum of her residence. The question, here, is not whether the process is good as quasi-in-rem process, but whether exercising jurisdiction comports with due process in light of *Shaffer*. And it may be as well to bear in mind that no jurisdictional issue has created more controversy in the last decade than that posed by *Seider v. Roth*, and that *Shaffer* nowhere refers to the *Seider v. Roth* assertion of jurisdiction unless, as plaintiff intimates, it did so in its reference in footnote 30 to Smit, *The Enduring Utility of In Rem Rules*, 1977, 43 Brooklyn L.Rev. 600 (which approved *Seider v. Roth*) and in saying in the footnote that the Court did not suggest that jurisdictional doctrines other than those discussed in text, such as particularized rules governing adjudication of status, are inconsistent with the standard of fairness.

*Seider v. Roth* was an action by New York residents against a resident of Quebec arising out of an accident in Vermont. Plaintiffs served a levy under an order of attachment on the casualty insurance company which had issued an automobile liability policy to defendant. The majority put the decision on the ground that the policy was a "debt" owed to defendant which could be seized in attachment under N.Y.C. P.L.R. § 6202 in light of Section 5201, which defines debt very inclusively. The court relied on *Matter of Riggle's Estate*, 1962, 11 N.Y.2d 73, 226 N.Y.S.2d 416, 181 N.E.2d 436; that case had held that the existence of such a liability policy covering a deceased

non-resident could furnish the asset basis for appointing a New York Ancillary Administrator (with will annexed) to continue the defense of an action commenced against the decedent during his lifetime; the action arose out of an accident in Wyoming and the plaintiff resided in New York. *Riggle* and *Seider v. Roth* cited *Furst v. Brady*, 1940, 375 Ill. 425, 31 N.E.2d 606, in which before suit an administrator was appointed for a deceased non-resident based on an asset consisting of a liability policy. Suits were thereafter commenced against the administrator, and the decedent's daughter then sought to set the administration aside as jurisdictionally defective. The Supreme Court of Illinois denied the application. The court noted that the real issues were between the plaintiffs in the suits and the insurance company and that the administration was admittedly procured for the purpose of ultimately reaching the proceeds of the insurance contract. The other cases cited both in *Riggle* and in *Seider v. Roth* were much to the same effect. The court in *Seider v. Roth* did not blink the fact that its decision "would be setting up a 'direct action' against the insurer" to the extent of requiring the insurer to defend in New York, not because a debt owing by it to defendant had been attached, "but because by its policy it has agreed to defend in any place where jurisdiction is obtained against its insured. Jurisdiction is properly acquired by . . . attachment since the policy obligation is a debt owed to the defendant by the insurer, the latter being regarded as a resident of this State . . .". The Court noted that in *Oltarsh, infra*, a direct action had been allowed in favor of residents, and that no reason of policy inhibited *Oltarsh* or the result in *Seider v. Roth*. The dissent challenged the reasoning as essentially circular: ". . . the promise to defend . . . is assumed to furnish the jurisdiction for a civil suit which must be validly commenced before the obligation to defend can . . . accrue."

*Oltarsh v. Aetna Insurance Co.*, 1965, 15 N.Y.2d 111, 256 N.Y.S.2d 577, 204 N.E.2d 622, was a case in which residents of New York allegedly suffered a tortious injury in a building in Puerto Rico owned by a Puerto Rican company. Aetna had issued a public liability policy to the Puerto Rican company, and Aetna was qualified to do and was doing business in New York. Plaintiff sued Aetna directly, relying on the Puerto Rican direct action statute. The lower courts dismissed the action on the ground that its maintenance was objectionable to New York's policy. The Court of Appeals reversed, finding the Puerto Rican statute substantive and broadly enough phrased to embrace suits by non-residents of Puerto Rico instituted outside Puerto Rico. The Court rejected the argument that New York's strong policy against the disclosure of the existence of liability insurance to trial juries required rejection of the suit, and noted that the rule of non-disclosure is not absolute, that it may nowadays be assumed that juries know that defendants in negligence cases are insured and that an insurance company and its lawyer are defending the suit. The Court observed that New York's Insurance Law § 167 revealed a different pattern but was not a basis for declining jurisdiction or refusing to give effect to the foreign provision.

The court reconsidered *Seider v. Roth* in *Simpson v. Loehmann*, 1967, 1968, 21 N.Y.2d 305, 287 N.Y.S.2d 633, 234 N.E.2d 669, 21 N.Y.2d 990, 290 N.Y.S.2d 914, 238 N.E.2d 319, "in the light of Federal constitutional issues not raised" in *Seider v. Roth*. The issues were due process, burdening interstate commerce in insurance, and impairment of the obligation of the contract of liability insurance. Again, the New York action was brought against a resident of Connecticut by a New York resident injured off the Connecticut shore in a boating accident, and the insurer was a Pennsylvania company doing business in New York. Chief Judge Fuld, writing for two of the judges, repeated the language from the majority opinion in *Seider v. Roth* that counted on *Matter of Riggle's Estate* and compared the policy implications of *Oltarsh* with those urged in *Seider v. Roth*. The Chief Judge then said (21 N.Y.2d at 310–311, 287 N.Y.S.2d at 636, 234 N.E.2d at 671):

"As demonstrated by a reading of the majority and dissenting opinions in the *Seider* case, the question whether the insurer's obligation constitutes a debt owing to the insured defendant and, as such, is subject to attachment under the CPLR was thoroughly debated and considered. It was our opinion when we decided that case, and it still is, that jurisdiction in rem was acquired by the attachment in view of the fact that the policy obligation was a debt to the defendant. And we perceive no denial of due process since the presence of that debt in this State (see, *e. g., Harris v. Balk*, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023)—contingent or inchoate though it may be—represents sufficient of a property right in the defendant to furnish the nexus with, and the interest in, New York to empower its courts to exercise an in rem jurisdiction over him. It is, of course, hardly necessary to add that neither the *Seider* decision nor the present one purports to expand the basis for in personam jurisdiction in view of the fact that the recovery is necessarily limited to the value of the asset attached, that is, the liability insurance policy. For the purpose of pending litigation, which looks to an ultimate judgment and recovery, such value is its face amount and not some abstract or hypothetical value.

"The argument that our decision sanctions a 'direct action' against the insurer is sufficiently answered by what we wrote in *Seider v. Roth* (17 N.Y.2d 111, at p. 114, 269 N.Y.S.2d 99, 216 N.E.2d 312):

'It is said that by affirmance here we would be setting up a "direct action against the insurer. That is true to the extent only that affirmance will put jurisdiction in New York State and require the insurer to defend here, not because a debt owing by it to the defendant has been attached but because by its policy it has agreed to defend in any place where jurisdiction is obtained against its insured.' "

Since the authority of *Harris v. Balk* has been overshadowed by *Shaffer*, although the Court may not have overruled it in explicit terms, it is important that Chief Judge Fuld noted separately the predicate considerations of *Seider v. Roth*. He said (21 N.Y.2d at 311–312, 287 N.Y.S.2d at 637, 234 N.E.2d at 672):

"The historical limitations on both in personam and in rem jurisdiction, with their rigid tests, are giving way to a more realistic and reasonable evaluation of the respective rights of plaintiffs, defendants and the State in terms of fairness. (See, *e. g., International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; *Longines-Wittnauer Watch Co. v. Barnes & Reinecke*, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68.) Such an evaluation requires a practical appraisal of the situation of the various parties rather than an emphasis upon somewhat magical and medieval concepts of presence and power. Viewed realistically, the insurer in a case such as the present is in full control of the litigation; it selects the defendant's attorneys; it decides if and when to settle; and it makes all procedural decisions in connection with the litigation (See, *e. g., Thrasher v. United States Liab. Ins. Co.*, 19 N.Y.2d 159, 167, 278 N.Y.S.2d 793, 225 N.E.2d 503.) Moreover, where the plaintiff is a resident of the forum state and the insurer is present in and regulated by it, the State has a substantial and continuing relation with the controversy. For jurisdictional purposes, in assessing fairness under the due process clause and in determining the public policy of New York, such factors loom large.

"The position taken by some who disagree with *Seider* would require that, as a matter of State policy, insurance be explicitly eliminated as the basis for the exercise of our in rem jurisdiction but this represents a judgment requiring data and information with respect to the practical effect of the *Seider* decision not presently available to this court."

The language adumbrates *Shaffer*; it rests, as does *Shaffer*, on *International Shoe*.

Judge Keating, concurring in the result, observed that the insurer in such a policy, must defend in any state in which the insured is involved in an accident, including direct action states—such as Louisiana. After speaking of the interest of direct action states in the lot of its residents injured in accidents occurring in the direct action state, Judge Keating continued

"Similar State interests, it seems to me, would sustain a direct action against the insurer in this jurisdiction if the Legislature had authorized such actions, even though the action could not have been brought directly in the State in which the accident took place. Although no direct action statute is presently in effect, I see no policy reason for not holding that service of process on the real party defendant—the insurer—is sufficient to compel it to defend in this State, provided it transacts business here and is thus subject to the jurisdiction of our courts.

"This court has on a number of occasions given effect to the strong State interest in facilitating recovery of persons injured in automobile accidents. The fact that the injury occurs outside of this State does not, of course, lessen that interest. (*Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279; *Macey v. Rozbicki*, 18 N.Y.2d 289, 292, 274 N.Y.S.2d 591, 221 N.E.2d 380 [concurring opn.].)

"Likewise, we have on a number of occasions recognized that the real party in interest is the insurer and we have given effect to the fiction sought to be perpetuated here only where the insurer would be prejudiced thereby. As we recently stated: 'The law maintains the fiction that the insured is the real party in interest at the trial of the underlying negligence action [only] in order to protect the insurance company against overly sympathetic juries.'"

Judges Breitel and Bergan concurred in the decision "on constraint of *Seider v. Roth*" because "the institutional stability of a court is more important than any single tolerable error." Judge Burke dissented, questioning whether the "direct action"

approach was constitutionally tolerable where the accident giving rise to the alleged liability occurred outside the forum. On this ground he differentiated *Watson v. Employers Liability Assurance Corp.*, 1954, 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74, in which the Court held valid the provisions of the Louisiana direct action statute that outlaws policy provisions forbidding direct action as the statute was applied in a suit by a resident of Louisiana based on personal injuries sustained in Louisiana from the use of a product made in Illinois by a subsidiary of a company headquartered in Massachusetts. The insurance policy was issued in Illinois and Massachusetts by a British insurer; the insurer had been compelled to sign an assent to direct actions as a condition of being qualified to do business in Louisiana. In his dissent in *Simpson* Judge Burke also criticized the *in rem* basis of jurisdiction both on situs and contingency grounds. Judge Scileppi concurred with Judge Burke.

On reargument the court made explicit its holding that the recovery in a *Seider v. Roth* type attachment could not exceed the face value of the policy attached even if the action was defended on the merits; further consideration of the provisions of N.Y.C.P. L.R. 320(c), seemingly exacting a general appearance in order to defend on the merits, as applicable to other types of attachment cases, was left to the future.

*Thrasher v. United States Liability Ins. Co.*, 1967, 19 N.Y.2d 159, 278 N.Y.S.2d 793, 225 N.E.2d 503, cited by Judges Fuld and Keating in *Simpson*, held that service of the judgment against the insured on the carrier-appointed attorneys who had defended the insured was effective service on the insurance carrier for the purpose of enforcing the judgment against it pursuant to Insurance Law § 167 sd.1(b). The court said (19 N.Y.2d at 167, 278 N.Y.S.2d at 799, 225 N.E.2d at 507)

"Although [the attorneys] were technically representing [the insured], in reality they were representing the interest of the insurance company (*Oltarsh v. Aetna*

*Ins. Co.,* 15 N.Y.2d 111, 118–119, 256 N.Y. S.2d 577, 204 N.E.2d 622; *Bearor v. Kapple,* Sup., 24 N.Y.S.2d 655, 658–659; *cf. Bennett v. Troy Record Co.,* 25 A.D.2d 799, 269 N.Y.S.2d 213). The law maintains the fiction that the insured is the real party in interest at the trial of the underlying negligence action in order to protect the insurance company against overly sympathetic juries (see *Leotta v. Plessinger,* 8 N.Y.2d 449, 461–462, 209 N.Y.S.2d 304, 171 N.E.2d 454). Once a judgment has been rendered, however, and a suit is subsequently brought against the insurance company, the reason for the fiction no longer exists for the factor of insurance is now one of the essential elements of the pending cause of action (see *Oltarsh v. Aetna Ins. Co., supra,* 15 N.Y.2d p. 118, 256 N.Y.S.2d 577, 204 N.E.2d 622). To hold that service on the attorney retained by the insurance company does not constitute service upon the insurer only serves to perpetuate this fiction. That it is fiction is abundantly demonstrated by the present case. The services of Glatzer, Glatzer & Evans were retained and paid for by the insurer. They had complete control of the defense in the negligence action."

*Seider v. Roth* and *Simpson* came under exacting constitutional scrutiny in *Minichiello v. Rosenberg,* 2d Cir. 1968, 410 F.2d 106, and *Farrell v. Piedmont Aviation, Inc.,* 2d Cir. 1969, 411 F.2d 812. Judge Friendly wrote in both cases. In the first, treating *Seider v. Roth* and *Simpson* as "in effect a judicially created direct action statute," he concluded that it was not invalid. Of *Watson* the court said (410 F.2d at 110):

". . . the Justice's final consideration—the plaintiff's difficulty in bringing the defendant before the forum—applies with even greater force to the state of plaintiff's residence than to that of injury in light of the development of long-arm statutes that will generally allow the state of injury to obtain personal jurisdiction of the insured and so avoid the need for a direct action against the insurer.

"We thus believe that, all things considered, the Supreme Court would sustain the validity of a state statute permitting direct action against insurers doing business in the state in favor of residents as well as on behalf of persons injured in it." The state's interest in protecting its residents was considered to be as great as its interest in a nonresident's in-state accident. The burden to the named defendant was considered as largely swept away by the *Simpson* limitation of the recovery to the face amount of the policy, possibly a constitutionally required limitation. On rehearing in banc, Judge Friendly used *Harris v. Balk* to meet the argument that *Seider v. Roth* was too burdensome to the named defendant. He said (410 F.2d at 118), after explaining Balk's dilemma when the debt was attached—engage a lawyer to defend a $180 claim in a Maryland court or default—

"The Maryland judgment deprived Balk of money he could have used for whatever purpose he willed; a *Seider* judgment would mean simply that liability policies, on which appellants could not have realized for any purpose other than to protect themselves against losses to others, will be applied to the very objective for which they were procured."

Judge Friendly observed that the named defendant could defend fully without exposure to personal liability, that the named defendant's covenant of cooperation might not even subject him to the inconvenience of required attendance at trial in the forum, and that the typical *Seider v. Roth* case was removable to the federal court, where defendant had the right under 28 U.S.C. § 1404(a) to move to transfer the case for the convenience of the parties and witnesses, in the interest of justice, to the place of defendant's residence or the place of the accident. *Cf. Van Dusen v. Barrack,* 1964, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945.

*Farrell* in substance limited *Seider v. Roth* to those cases in which the plaintiff was resident in the forum state, because the constitutional doubt with respect to applying it in favor of nonresidents suing on out-of-state accidents would be exceedingly serious. Judge Friendly read both *Seider v.*

*Roth* and *Simpson* as implying such a limitation (411 F.2d at 816–817).

*Seider v. Roth* has not been widely followed. It was followed in *Forbes v. Boynton*, 1973, 113 N.H. 617, 313 A.2d 129 in a suit by a resident of New Hampshire against a resident of New York arising out of an accident in Maine. The court considered that jurisdiction could be rested on the nonresident defendant's rights under the liability insurance policy; the court relied on *Robinson v. Carroll*, 1934, 87 N.H. 114, 174 A. 772, a case similar to *Matter of Riggle's Estate*, and one of the cases relied on by the majority in *Seider v. Roth*. The court said (313 A.2d at 132):

> "It is well established that the liability of the insurer to indemnify becomes fixed on the happening of an accident within the coverage of the policy, subject to defenses which may arise thereafter."

The court emphasized that the insurer is in full control of the litigation and selects defense counsel. The court declined to characterize the procedure as "direct action" against the insurer. The court, however, added (313 A.2d at 133):

> "Our legislature has provided a means by which foreign motorists who have been involved in an accident on our highways can be submitted to the jurisdiction of our courts in actions for damages resulting therefrom. RSA ch. 264 (Supp. 1972). The State of New Hampshire has a similar interest in providing a resident plaintiff the use of our courts to obtain redress for injuries incurred in an accident on an out-of-State highway *particularly when the State of residence of the defendant would furnish the defendant a forum if the roles were reversed. Simpson v. Loehmann*, 21 N.Y.2d 305–319, 287 N.Y.S.2d 633–645, 234 N.E.2d 669–677 (1967)." (Emphasis added).

*Robitaille v. Orciuch*, D.N.H.1974, 382 F.Supp. 977, in effect treated *Forbes v. Boynton* as confined to automobile accident cases, and to cases where the defendant's state of residence also applied *Seider v. Roth*. In *Camire v. Scieszka*, 1976, 116 N.H. 281, 358 A.2d 397, the court narrowed

*Forbes* to its special facts without repudiating its result.

The Supreme Court of Minnesota sustained the validity of the *Seider v. Roth* type of attachment as limited to suits by residents, with limitation of recovery to the amount of the liability insurance policy, provided adequate notice and an opportunity to defend are given to the named defendant. *Savchuk v. Rush*, Minn.1976, 245 N.W.2d 624. The District Court in Minnesota had earlier reached the same conclusion in *Rintala v. Shoemaker*, D.Minn.1973, 362 F.Supp. 1044. *Cf. Adkins v. Northfield Foundry and Machine Co.*, D.Minn.1974, 393 F.Supp. 1079 (action dismissed where plaintiff is non-resident.)

Fairly representative of the more numerous cases rejecting *Seider v. Roth* is *Javorek v. Superior Court*, 1976, 17 Cal.3d 629, 131 Cal.Rptr. 768, 552 P.2d 728; the Supreme Court of California carefully reviewed the New York cases, including *Minichiello*. It put its decision on the grounds that the insurer's obligation remains contingent until the insured's liability has been determined, that the reasoning in *Seider v. Roth* was essentially circular, and that the obligation to defend, if considered absolute and not contingent, was devoid of attachable content since it was exhausted by the performance of the service rendered to the defendant.

*Seider v. Roth* and *Simpson* are *sui generis* in the field of jurisdiction. They cannot be pigeon-holed as *in rem* or *in personam*. They are in real terms *in personam* so far as the insurer is concerned. For the named defendant the suit is only an occasion of cooperation in the defense; his active role is that of witness. It is beside the point to test the constitutionality of the procedure in terms of the named defendant; his role as a party is hardly more real than that of the casual ejector Richard Roe in common law ejectment actions. What is at stake in the suit is the plaintiff's claim for the payment of his alleged damages by the insurer.

Section 167, subdivision 1, of the New York Insurance Law and Section 38.1–380 of the Virginia Code are alike in making

the insurer directly liable to the plaintiff not only if the judgment against the insured is not promptly paid but also if the insured becomes bankrupt. The insurance contract is, thus, not merely a contract with insured protecting the insured against loss, but it directly obligates the insurer to pay persons injured by the insured's negligence. If the insurer refuses to defend, it may be brought in as a third party defendant under Rule 14 of the Federal Rules of Civil Procedure. *Colton v. Swain*, 7th Cir. 1975, 527 F.2d 296, 303. If the insurer in bad faith refuses to settle within policy limits, and judgment against the insured is in excess of the policy limits, the plaintiff in the action has been held to be entitled to recover directly from the insurer the excess over the policy limits. *Davis v. National Grange Ins. Co.*, E.D.Va.1968, 281 F.Supp. 998.**

The emphasis in many of the cases on the supposedly contingent nature of the insurer's obligation appears to be misplaced. The occurrence of the accident, the plaintiff's injuries, and the insured's connection with the accident are determinative events. To be sure there may never be a suit, but the insured is under an immediate duty to give prompt notice of the accident to the insurer. Investigation usually commences at once, and the parties in interest, potential plaintiff, insurer and insured are identified. Control of investigation, defense and settlement are in the insurer's hands. The prospective plaintiff's relationships are with the insurer, not with the insured. When an action is commenced the insurer controls the conduct of the defense, and, if the suit is in a federal court, plaintiff may obtain discovery of the existence and content of any relevant insurance agreement (Rule 26(b)(2)). Ironically, perhaps, it is the insurer, the one who is responsible for the defense of the suit and for the payment of any judgment, and who is itself unable to deny that it is fully suable in the state, who

puts forward the plea to jurisdiction in the name of the nominal defendant, who will not pay the judgment, nor manage the defense. One court, commenting on *Seider v. Roth* and *Simpson*, suggested that the New York court did not go far enough. *Kirchen v. Orth*, E.D.Wis.1975, 390 F.Supp. 313, 319. The Wisconsin District Court sustained joinder of the insurer and dismissed the suit against the nonresident insured although holding that the Wisconsin direct action statute was inapplicable. The court said (390 F.Supp. at 318–319)

"The law has too long maintained the fiction that the insured is the real party in interest. Viewed realistically and honestly, the insurance company conducts the defense, employs its own attorneys, decides if and when to settle, and is in full control of the entire litigation. The principal concern of the insurer is to protect its own 'contingent' liability under the contract. As a general proposition, the law of this state rejects this legal fiction, recognizing that the insurer is the real party in interest and that the insured is a mere nominal party. When utilized to completely defeat the causes of action of injured Wisconsin plaintiffs, the legal fiction created by no-action clauses becomes too onerous to enforce in good conscience. Thus, aside from the equitable consideration presented by this case, precluding the insurance company's assertion of the no-action clause is compelled by a realistic and reasonable evaluation of the respective rights of the plaintiffs, defendants, and the State of Wisconsin. The interest of the State of Wisconsin in facilitating recovery of residents injured in automobile accidents is not lessened by the fact that the accident occurred out of state. Therefore, a recognition of realities, rather than fictions, dictates the conclusion that this action is maintainable

---

** *Henegan v. Merchants Mutual Ins. Co.*, 1st Dept. 1968, 31 A.D.2d 12, 294 N.Y:S.2d 547, 549, premised its decision that the insured could recover for the insurer's wrongful refusal to settle without first paying the judgment to

the claimant on the ground that to do otherwise would "permit the insurer to take advantage of the financial status of its insured and deprive the ultimate beneficiary claimant of his judgment."

against Guaranty National, notwithstanding its no-action clause." (Footnote omitted)

See, similarly, *Barrios v. Dade County*, S.D. N.Y.1970, 310 F.Supp. 744.

It is concluded that *Shaffer* does not require rejection of *Seider v. Roth* and *Simpson.* The jurisdiction exercised under those cases is one in favor of residents only, is available only against insurers suable in the state, requires giving adequate notice to the insured, and, in all probability, the judgment rendered in such a suit does not prejudice the named defendant's right to relitigate the issues of liability and damages if he is sued again for the amount in excess of that recovered in the suit based on the *Seider v. Roth* attachment; and there remains the caution that the procedure may not be used as the means of obtaining a preference in the distribution of inadequate coverage in cases involving multiple claims and claimants. See *Minichiello v. Rosenberg, supra; Farrell v. Piedmont Aviation, Inc., supra.*

Sustaining the jurisdiction in the present case does not offend the policy considerations underlying *Shaffer* and preserves the anonymity of the defending insurance company in keeping with the policy of those states, which, like New York, do not authorize direct action against insurance carriers.

It is

ORDERED that defendant's motion to set aside the service of process and to dismiss the action is denied.