OPINION OF THE COURT
Sidney Leviss, J.
In this personal injury action defendant Target Store, Inc., moves to dismiss the complaint on the ground that the court lacks jurisdiction. Defendant Hart cross-moves for the same relief. This is another in a series of cases attacking the viability of quasi in rem jurisdiction asserted under Seider v Roth (17 NY2d 111) and Simpson v Loehmann (21 NY2d 305) by reason of the recent decision of the United States Supreme Court in Shaffer v Heitner (433 US 186).
The action arises out of an injury to the infant plaintiff occurring on March 3, 1970 while she was a guest of the defendant Hart in Colorado. Infant plaintiff, in the rear yard of defendant Hart’s premises, was struck in the eye by a golf practice device which became dislodged from the ground. Defendant Target Store sold the device. From the evidence presented it does not appear, nor is it claimed, that either defendant had any contact with New York so as to support in personam jurisdiction under CPLR 301 or 302. Pursuant to an order of this court dated July 24, 1972 the liability insurance policies of the defendants were attached, the respective insurance companies being present in New York. The exercise of such jurisdiction was formulated by the Court of Appeals in Seider v Roth (supra) and Simpson v Loehmann (supra), predicated upon the long-standing jurisdictional rules set down in Pennoyer v Neff (95 US 714) and Harris v Balk (198 US 215). In a decision rendered on June 24 of this year the Supreme Court overruled the Pennoyer v Neff rule (Shaffer v Heitner, 433 US 186, 212, supra) and held that State court exercise of in rem or quasi in rem jurisdiction must be measured by the same minimum contact standard expressed in International Shoe Co. v Washington (326 US 310) covering in personam jurisdiction. (Shaffer, supra, p 212.)
Since that time at least three courts have faced the question now before this court. (Katz v Umansky, 92 Misc 2d 285; O’Connor v Lee-Hy Paving Corp., 437 F Supp 994 [Dolling, J.]; Torres v Tocomotor Div. of Caterpillar, US Dist Ct, EDNY, Nov. 21, 1977 [Bramwell, J.]) In the well-reasoned opinions in
*456 Katz and Torres the courts concluded that the Seider-Simpson rule is no longer viable, a conclusion with which this court is compelled to agree. (See McLaughlin, NY Trial Prac, NYLJ, Dec. 9, 1977, p 1, col 1.)
While Shaffer is factually different from Seider and its progeny, the Shaffer decision cannot be limited to its facts. There, a nonresident brought a stockholder’s derivative action in the courts of Delaware based on alleged breaches of fiduciary duties by present and former officers and directors of the Delaware corporation. Concededly, many of these officers and directors had no contact with Delaware and the principal place of business of the corporation was in another State. Jurisdiction was sought over 21 defendants by sequestration of their stock interests.
Unquestionably, the function of the Delaware sequestration statute was to compel the defendants’ in personam appearance. (Shaffer, supra, p 209.) Such compulsory appearance is no longer possible in New York with the amendment of CPLR 320 (subd [c]). (McKinney’s Session Laws of 1969, p 2259.) In any event, the Shaffer decision deals with more than those cases. Recognizing that the Delaware statute "presents the clearest illustration of the argument in favor of assessing assertions of jurisdiction by a single standard” (Shaffer, supra, p 209), the court concluded that "all assertions of state court jurisdiction must be evaluated according to the standards set forth in International Shoe”. (Shaffer, supra, p 208.)
Shaffer does not result in the abolition of in rem jurisdiction. The test, then, is whether, in addition to the presence of the property, sufficient contacts exist between the forum, the defendant and the litigation. In some instances the presence of the property may demonstrate those contacts. Thus, the court concluded that cases concerning title or interest in property would provide a sufficient jurisdictional basis. Such conclusion was not reached on the Pennoyer-Harris formula of presence, but on the legitimate interest of a State to provide a forum for resolving disputes and maintaining marketability for property within its borders. (Shaffer, supra, pp 208, 209.) However, "where the property which now serves as a basis for state court jurisdiction is completely unrelated to the plaintiffs cause of action”, other contacts must be established. (Shaffer, supra, p 208, 209.)
*457 One court in O’Connor v Lehigh Paving Corp. (supra), resting heavily on the analysis in Simpson (supra), concludes that Shaffer does not require the rejection of Seider. In considering the constitutional challenge to Seider, Chief Judge Fuld in Simpson stated (21 NY2d 305, 310, 311, supra):
"As demonstrated by a reading of the majority and dissenting opinions in the Seider case, the question whether the insurer’s obligation constitutes a debt owing to the insured defendant and, as such, is subject to attachment under the CPLR wás thoroughly debated and considered. It was our opinion when we decided that case, and it still is, that jurisdiction in rem was acquired by the attachment in view of the fact that the policy obligation was a debt to the defendant. And we perceive no denial of due process since the presence of that debt in this State (see, e.g., Harris v. Balk, 198 U. S. 215, supra) — contingent or inchoate though it may be — represents sufficient of a property right in the defendant to furnish the nexus with, and the interest in, New York to empower its courts to exercise an in rem jurisdiction over him. It is, of course, hardly necessary to add that neither the Seider decision nor the present one purports to expand the basis for in personam jurisdiction in view of the fact that the recovery is necessarily limited to the value of the asset attached, that is, the liability insurance policy. For the purpose of pending litigation, which looks to an ultimate judgment and recovery, such value is its face amount and not some abstract or hypothetical value * * *
"The historical limitations on both in personam and in rem jurisdiction, with their rigid tests, are giving way to a more realistic and reasonable evaluation of the respective rights of plaintiffs, defendants and the State in terms of fairness. (See, e.g., International Shoe Co. v. Washington, 326 U. S. 310; McGee v. International Life Ins. Co., 355 U. S. 220; Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 15 NY 2d 443.) Such an evaluation requires a practical appraisal of the situation of the various parties rather than an emphasis upon somewhat magical and medieval concepts of presence and power. Viewed realistically, the insurer in a case such as the present is in full control of the litigation; it selects the defendant’s attorneys; it decides if and when to settle; and it makes all procedural decisions in connection with the litigation. (See, e.g., Thrasher v. United States Liab. Ins. Co., 19 NY 2d 159, 167.) Moreover, where the plaintiff is a resident of *458 the forum state and the insurer is present in and regulated by it, the State has a substantial and continuing relation with the controversy. For jurisdictional purposes, in assessing fairness under the due process clause and in determining the public policy of New York, such factors loom large.”
While such rationale may be enticing, it is still clear that the insurance policy is not at the heart of plaintiff’s cause of action in negligence. The sole relationship of the policy is to satisfy any potential judgment. For all intents and purposes it is as unrelated to the cause of action as the sequestered stock was in the Shaffer cause of action based on breach of a fiduciary duty. "[Although the presence of the defendant’s property in a State might suggest the existence of other ties among the defendant, the State, and the litigation, the presence of the property alone would not support the State’s jurisdiction. If those other ties did not exist, cases over which the State is now thought to have jurisdiction could not be brought in that forum.” (Shaffer, supra, p 209.) No matter by what analysis one sees the insurance company as the primary defendant, such reasoning is focused on the policies attached in New York and provides no other contacts with the litigation and the defendant.
Even conceding that New York has a legitimate interest in regulating insurance companies, such does not add any dimension to the analysis. Regulatory interest of a State may justify jurisdiction over the insurance company, but will not provide the basis for quasi in rem jurisdiction over the property of the nonresident defendant. (See Shaffer, supra, p 209.)
Thus, in the present case New York has no constitutional basis for exercising in rem jurisdiction over the insurance policies of the moving and cross moving defendants.
There is some suggestion in O’Connor v Lehigh Paving Corp. (supra) that the New York courts have in fact created a "direct action” against the insurance company. The strongest statement to this effect is found in Donawitz v Danek (42 NY2d 138) rendered by the Court of Appeals 10 days prior to Shaffer. There, the court said (p 142): "Moreover, as the Seider court itself recognized, its holding in effect established, by judicial fiat, a 'direct action’ against the insurer (Seider v Roth, 17 NY2d 111, 114, supra). Thus, this court did indirectly that which the Legislature could have done, but failed to do, directly (see Watson v Employers Liab. Assur. Corp., 348 US *459 66; cf. Ray v Marine Midland Grace Trust, 35 NY2d 147). In the absence of any corrective measures taken by the Legislature during the 11-year history of the Seider-Simpson rule, it must be concluded that they are satisfied with it, and we, therefore, should refrain from disavowing it.” The conclusion that New York law permits a "direct action” was severly criticized by Judge Jasen in a concurring opinion in Donawitz (supra, p 143). Certainly, such conclusion does not follow from the opinion of the court in Seider. "It is said that by affirmance here we would be setting up a 'direct action’ against the insurer. That is true to the extent only that affirmance will put jurisdiction in New York State and require the insurer to defend here, not because a debt owing by it to the defendant has been attached but because by its policy it has agreed to defend in any place where jurisdiction is obtained against its insured. Jurisdiction is properly acquired by this attachment since the policy obligation is a debt owed to the defendant by the insurer, the latter being regarded as a resident of this State, as Riggle holds in so many words at pages 76 and 77 of 11 NY 2d.” (Seider v Roth, 17 NY2d 111, 114, supra.) That disaffirmance of a "direct action” was reiterated by the court in Simpson (21 NY2d 305, 311, supra). Clearly, the court in both Seider and Simpson applied the analogy of a "direct action”, a theory constitutionally sustained. (Watson v Employers Liab. Corp., 348 US 66.) In applying the PennoyerHarris doctrine to the attachment of insurance policies the Court of Appeals recognized a changing philosophy of jurisdiction and sought by the "direct action” analogy to adjust to that change. (Simpson v Loehmann, supra.) This court cannot escape the apparent logic that the term "direct action” can mean only an action against the insurance company and not an indirect action through a suit against its insured. In every instance the Court of Appeals was sustaining quasi in rem jurisdiction against the property interests of a nonresident defendant. Even the court in Donawitz does not claim the creation of a "direct action”, but simply the effect thereof. (Donawitz v Danek, supra, p 142.) Absent a clear statement by the highest court of this State that an action is now permitted directly against the insurance company, any theory of "direct action” must be rejected by this court.
Under the circumstances, the motion and cross motion are granted.